1-813-58 United States v. Juan Bravo-Fernandez and number 1-813-70 United States v. Hector Martinez-Maldonado. Good morning, your honors. Martin Weinberg on behalf of Juan Bravo-Fernandez, I would ask to reserve two minutes of my time. Both appellants were convicted in the retrial in the District of Puerto Rico of one count of violating 18 U.S.C. 666, a statute that facially requires proof beyond a reasonable doubt that benefits the statutory term. An excess of $10,000 was received by a state, in this case the Commonwealth of Puerto Rico, and that these benefits were granted, loaned, contracted for under a federal program. There were two gaping holes in the evidence, which consisted solely of a stipulation that the Commonwealth of Puerto Rico receive $4.7 billion in federal funds. First, there was no evidence at all from the perspective of the federal or grantor side as to whether or not there was any federal program from which these funds originated. And from the recipient side, there was absolutely no evidence within the stipulation as to what became of the funds, whether there was an organization that spent them in a manner that was consistent with this court's precedent in Dubon Otero, the U.S. Supreme Court precedent in Fisher, for benefits. Can I ask you a question about that? Of course, Your Honor. So I think it's an 11th Circuit case. McClain seems to, post Fisher, the 11th Circuit changed its position after Fisher and took the view, as I read the case, McClain, that evidence has to go in front of the jury about the structure or however it is that you prove the sum of 4.7. Some amount in excess of $10,000 in a year out of 4.7 billion were benefits as opposed to just funds. I'm not sure that Fisher actually says that. It just sort of jumps into the structure and nature of the program. So how do I determine whether it's an evidentiary question or whether it's something that we can just analyze under the law and the regulations? Well, I think we go back to this Circuit's primary precedent of Dubon Otero, which came right after the Supreme Court's Fisher decision, where they say when we apply Fisher to this case, we conclude, and the jury supportably could have so found that the institute payments that helped services received constituted benefits. And whereas the Fisher test and the mandatory requirement, and they use imperative type terms, that there must be evidence and must be an examination by the court and jury of the benefit element rather than the funds element that solely was the subject of a stipulation, it was simply, I think this case is, I hate to say, easy in a way because there was no evidence as to how the funds were used once having been received in the Commonwealth of Puerto Rico. Was that type of evidence presented in the prior cases? There was evidence in Bravo Fernandez I. There were two witnesses. One testified essentially to the subject matter of the stipulation in Bravo Fernandez II, but there was a second witness that testified to the expenditure of funds received federally through the Department of Education, an executive agency, essentially to provide lunch and food for low-income families of senators. That arguably could have... Are you referring to the testimony of Rosemary Pedro? Yes, and a second witness in Bravo Fernandez I. For some reason, the record doesn't reflect why the witness that testified to the specific Department of Education program that appears to satisfy the term benefits was simply not presented. There was no stipulation, and there was no basis for this jury to find or in fact for the Judge Besosa to determine under Rule 29 or for this court to review, either on one hand, was there any federal program that was involved in the $4.7 billion on the originating end, or what became of the money? Was the court asked to take judicial notice of anything along this area? No, Your Honor, and that's the point, which is that we can all assume or maybe intuit that some subset of this large amount of money was used for a benefit, but we're disciplined to look at the four corners of the record, and without going outside the record, there is nothing but a stipulation, a one-sentence stipulation in terms of federal funds in the amount. It happened to be the instruction that Judge Besosa gave to the jury, which the government consented to and now says they assume it's erroneous. The jury had no basis to evaluate benefits, no basis to evaluate whether or not there was a federal program. Does it make any difference, and I don't know if so, does it make any difference that the organization here is the government? The reason I ask is this. If you look at Fisher and you look at the cases like Fisher, you have payments of funds going to an organization, but it's an organization that could have several bases for receiving funds from the government. It might be selling goods or services to the government, so we need to know something about it to know whether those funds are payments for goods or services on the one hand, in which case the statute's not triggered, or they're benefits, in which case the statute is. When we have not an organization like a hospital in Fisher, but we have a governmental entity, is there a need to make that distinction, or can we just presume what other possible purpose could those funds be other than benefits? The statute doesn't have a carve-out for states. The Commonwealth is one of several types of entities that receive monies from the federal government. There's no carve-out that exempts from the government's burden of proof. No, I'm not saying they don't have to be benefits. I'm saying can the government really, it seems to me they left that piece of evidence they put in the first time around, and so they're now asking us to fill that piece of evidence by saying 4.7 billion in funds, it's got to be benefits in there somewhere. Is that a conclusion that we reach inexorably when we're talking about a government recipient? What else could the benefits be paid for? There's a statutory exception under 666C for certain types of payments, salaries, reimbursements, wages. Dubon-Otero in footnote 8 talks about commercial payments as being outside the ambit of 666. I urge the court not to expand a criminal statute beyond its plain language. There is nothing in the statute, and Dubon-Otero really teaches us that we ought to look, whether it's indirect or direct payments, we ought to look at the plain language of the statute which requires the government to prove both the federal program, totally absent the legislative history. This court in Bravo Fernandez 1 at 722 Fed 3rd page 21 and 25 talks about the importance of federal programs, not just a federal fund, totally absent from the stipulation. And then on the other hand, just no basis for a jury or a judge to determine how this money was spent. There was no insuperable burden that prevented the government from calling the same witnesses at Bravo Fernandez 2. The record doesn't reflect why they didn't, but the record does not reflect a principle predicate for finding that the statutory element of benefits was met. Thank you. Good morning, Your Honors. I'm Abbey Lowell. I represent Hector Martinez-Maldonado. I'd like to reserve one minute. Yes. After two trials, three visits to this court and one to the Supreme Court, as an extensive record, I'd like to focus on three things that I think respond to some of the questions I just heard. The first is when in Fisher and other cases, the Supreme Court, and in your cases, this court, raises the issue of making sure that we don't breach the proper contours of federalism. What does it mean? This case is what it means. It means that in 666, when you have already the ability to expand the definition of agent across three branches, without necessary regard of matching any funds or benefits to one branch or the other, what the government is now doing is saying you can eliminate one more element to make what the Supreme Court said you shouldn't do, a common law for state and local bribery and corruption, because you've basically now eliminated the one thing of which 666 was intended, which was to protect the federal program funds. Without that element, writing it off as the government did in this case, you have basically created that boundless event the Supreme Court warned against. The second thing I want to point out is that when the government and then the court doubled down after they realized that they had done this, and I don't think it was inadvertent on the part of the government because they were given the opportunity when the stipulation was created to be told, this does not fix the problem, this does not satisfy the element. What happened next is very instructive. Even though both parties had an instruction which had the proper phraseology of benefits, the court on its own changed the word benefits to funds, which not only is its own error, but it emphasizes that this was not harmless and also emphasizes the gap in the evidence that the court and then the government realized it had to make up, not with evidence, but with a change of instruction. Because then the government said, yeah, you're right, even though we submitted this issue that it was the instruction that says benefit, we now think it should say fund. The third point I'd like to make is the one that comes out of McLean, Judge Howard. I want to read what the court said because it's identical. The court said it must be emphasized that it was the government's failure to produce evidence on this element that leaves us with no opportunity to examine the federal program's, quote, structure, operation, and purpose. The jury did not choose among conclusions to be drawn from the evidence because only one conclusion can be drawn. There was no evidence of federal benefits. That's what's significant about the decision of the government to take this case a bridge too far. And, Judge Ferrellis, because- Can I stop you there? Sure, of course. So we may be deciding whether we're going to adopt the reasoning of McLean. I take it we're not required to. From Fisher, we're not required to adopt McLean's evidentiary base. The jury had to hear this, right? But if I take your larger principle, your larger federalism principle, in this case it requires us to enter a make-believe world, right? So why should we do that just for the sake of the principle? Well, the question really becomes do elements matter? The difference between creating 666 as a federal crime and any other thing in this state or Puerto Rico or any other state is that the elements matter. So if you are saying by make-believe world, as the government argued in closing, that $4.7 billion is a heck of a lot more than $10,000, that is literally true as a mathematical formula. But if you have a statute that has exception- In carrying the point a little bit further, it's possible that a reasonable juror could infer that some amount in excess of $10,000 of that $4.7 billion wasn't for lease of a port, a slip in a port, or salaries and wages, but in fact were benefits because that's the structure of the United States. Only if there was a hook. And in the difference between the first trial and the second trial, you had a hook. You had the identification of an actual program. It's not just the funds, Judge Howard. The statute speaks to the existence of a federal program. Now if the stipulation had had the word federal program in it, maybe you could intuit more than a bare-bone stipulation. Here the problem is, I understand what you mean by make-believe world, and if you want to eliminate an element, let me say this.  This is a wire or mail fraud statute, and there was no evidence that a mailing took place, and there was no evidence that a wire took place. But of course we all know that in a transaction in which something is paid or something is transferred, there would have had to be a mailing and there would have had to be a wire. If they omit that, common sense dictates in this modern world you can't get from there to there without it, but we don't let the government do that. You would immediately reverse a case in which that element had not been satisfied. This is no different an element. It's an element. Let me try to make something a little different. Suppose the statute required to be an agent, defined an agent as any human being employed by the government, and then the government put on a trial and said Joe Doe is the agent, but never put in testimony that Joe is a human being, right? And so wouldn't we be able, would we reverse that for insufficiency, or would we say, come on, the jury knows that Joe Doe is obviously a human being? I think by equating human being to whether or not in a very specific statute that creates federalism versus state prerogative and jurisdiction, that's not the apt analogy. How about this one though? What if the government in this case did not put on evidence that my client was a member of the state legislature, but simply had the piece of legislation as a piece of evidence, but decided that it was intuiting to the jury, then it would be somewhat similar. You have to, of course, draw the line someplace. But I would suggest to this court, based on the principles of both contours of federalism, but the specific statutes in mind of the elements, that if elements matter, for whatever reason they were warned that this was an error that they were inviting, and they decided to do it anyway. Good morning. May it please the court, Vijay Shankar for the United States. Excuse me, were you a trial lawyer in this case? I was not, Your Honor. Or in the first case? I handled the appeal in the first case. I have not tried either of these cases. Can you just start off by telling me why you presented the evidence I appointed to in the first case? The government did, I should say, not you. Yes. And you didn't do it in this third case or second case? I've lost track. Yes, Your Honor. Absolutely. And the point here, Your Honor, is that the evidence of the Senate Child Care Program, the issue is a red herring with due respect to my colleagues. Here is why. In the first trial, the government presented two independent theories for the $10,000 jurisdictional element. The first was $4.7 billion in federal funds to the Commonwealth as a whole. The second theory, which was independent and was based on the government's knowledge that the defendants were going to challenge and had already challenged pre-trial their agency vis-a-vis the Commonwealth, the government presented separate evidence of a Senate Child Care Program. Now let's move forward to the first appeal. The defendants themselves on appeal in this court characterized these as two theories. That's from their brief. They then went on to challenge both of these theories on independent grounds. As to the Commonwealth receiving $4.7 billion in funds, they said this court can't rely on that because we were not agents of the Commonwealth. This court rejected that argument. As to the Senate Child Care Program, the defendants said this court can't rely on that because this was a Department of Education program, not a Senate program. Now, the way this court resolved the issue is critical. This court never touched the Senate Child Care Program. After having found, concluded that the defendants were agents of the Commonwealth, it only had to look at the $4.7 billion in federal funds to the Commonwealth. It then said, after noting that the statute requires not just agency of a government, but agency of a government that receives over $10,000 in federal benefits, that the elements of the statute were satisfied. That is exactly why this court's holding in Fernandez established that, at least in the circumstances of this case, evidence that the Commonwealth of Puerto Rico received over $4.7 billion in federal funds was sufficient to satisfy both the agency element of the statute and the $10,000 jurisdictional element in the statute. And it's that last point that you need to really focus in on, because as I read at least the opinion in Fernandez, what seemed to be an issue there was whether they were agents or not. And the court decided that they were an agent and then went on and filled in something. I didn't see any indication that the court had turned its attention to the issue that's now before us, which is, is evidence that $4.7 billion in funds flowed sufficient in and of itself to not only support a finding that it benefits, but then to essentially mandate such a finding so as to eliminate it from the jury instructions. Right, Your Honor. And I agree that the defense did not raise a specific funds versus benefits argument in the first appeal. Right. And we can argue whether that constitutes a law of the case, bar to raising it now, I realize that's a separate point. But the bigger point is that this court did implicitly find that the evidence was sufficient, the evidence that was presented in the first trial, which is for our purposes exactly identical to the evidence in the stipulation in the second trial, was sufficient because the court started by saying, and this is at 72F3rd at 9, the court said, if the $10,000 threshold is not met, then the actions of the agents cannot implicate Section 666. Your answer to Judge Tarweya's question seems to say that the prosecutor, and I know you didn't try the case, but the prosecutor who tried the case intentionally decided not to put on evidence that some of this $4.7 billion went to benefit programs. That's what you seem to be saying. Well, what I'm saying is that there were two theories presented in the first trial, and once this court essentially said that the second theory was unnecessary because the defendants were agents of the Commonwealth. In other words, we didn't have to prove that the defendants were agents of the Senate specifically. Why then put benefits in your requested instructions? Well, certainly, Your Honor, the statute uses the term benefits. Is that an element of the crime? It is an element of the crime. Do we have to prove the element of the crime, though? We do, Your Honor, but do we have to prove it with the word benefits? How does a jury know whether a fund is a benefit or not? Well, I think this is very important, Your Honor, because the Supreme Court in Fisher, this is not a case using a term of art or a highly technical term. The Supreme Court in Fisher specifically held that the term benefits in 666 is used in its ordinary sense. This is not a term that has to be defined to the jury. Juries can use their common sense and reasonable inferences. Can you point us to any other case from the Supreme Court at this circuit where a statute has had an express requirement of an element, such as here, there be benefits, and that element can be left out of a jury instruction intentionally over objection? Your Honor, I understand the instruction issue is slightly different. I do agree that the jury instruction should have used the term benefits. The question is still whether a properly instructed jury would, overwhelming evidence would have supported a properly instructed jury finding that benefits were involved. So work us through that mind game. Had the judge not stricken it, and why the prosecutor didn't jump up and support defense counsel at that point is a mystery to me. You've got a strong case. The last thing you want to do is have a judge miss an instruction. But anyhow, it happened. So your harmless error argument is what would have happened to the jury? Well, the defense counsel would have run the changes on benefits. They would have said there's evidence of funds, but there's no benefit program. And the prosecutor would have been left telling to the jury, well, use your common sense. Some of that must go. And then they would have asked for instruction on what the jury could take notice of outside the courtroom or not. How do we know how that would have unwound, whether the jury might have got interested in what is the technical requirement? I think what's important here, Your Honor, and when I said that the defendants did not challenge the benefits element of the statute in the first trial, I'm sorry, the second trial, I stand by that. They challenged the language of the instruction. They never put on evidence or otherwise argued to the jury that as a matter of fact, the Commonwealth of Puerto Rico did not receive at least $10,000 in federal benefits. They don't have the burden of disproving an element. No, they don't have the burden. This court, in determining whether the evidence was overwhelming, looks at whether there was any contrary evidence. And the fact that they now had an erroneous instruction that they could challenge doesn't mean that they put anything in front of the jury, argument-wise or evidence-wise, that would cause any reasonable juror to conclude that the territory, a federal territory, did not receive over $10,000 in federal benefits when the territory received $4.7 billion in federal funds. Now, if I can point to an example. I'm sorry, before you go any further, maybe I'm completely wrong intuitively, but intuitively, I don't understand why we keep going back to the first trial. This trial, as far as I'm concerned, has to be proven irrespective of what happened in the first trial. This trial requires proof of all the elements of the crime, one of them being benefits over $10,000. Why am I off base here? You're completely on base, Judge Torello. The only reason I'm talking about the first trial is the question put to me when I stood up here was, why was the evidence different in the second trial than it was in the first trial? And my answer was... I'm sorry to open the door, but I have to ask that question. Your Honor, the question is, what does the jury have to find? And the government obviously does not dispute that the jury has to find the elements of the statute. The question is, what specific words have to be in front of the jury in order for it to find it? An example I might give the court is a bank fraud trial, which requires a material misrepresentation. Now, the government has to prove materiality. But does the government... And if they do... Let's say they did that through a stipulation with the defense. And the stipulation says, Bank A considered this information, this misrepresentation, strongly in granting the fraudulently obtained loan. Stipulation doesn't use the word material. Would we stand here and say that that stipulation was insufficient because it didn't use the word material when the jury had in front of it everything, including reasonable inferences, to conclude that the misrepresentation was material? Now, this brings me back to Chief Judge Howard's first question to my colleagues, which is, is there anything in Fisher or Dubon-Otero that speaks of what a jury has to be shown, or what has to be presented to the jury? No. Now, I think it's important to look at Fisher very carefully. That case did not contract liability under Section 66, or contract or diminish the definition of benefit. It actually expanded it. And it expanded it significantly to reach profit-making private entities that receive government benefits just simply by virtue of being part of a federal program. Now, in doing that, the court understood that it was creating some risk that all federal funds could be used synonymously with benefits, such as where the government engages in point-of-sale transactions with, for example, equipment suppliers. It is in that context that the court said we have to be vigilant, and in such situations, a court would have to look at the nature, program structure, and operation of the federal program at issue. Nothing in Fisher or Dubon-Otero or McLean or the Ninth Circuit's decision in Pexeo says anything about what a jury has to be shown in this type of case, where we've got a territorial government entity directly receiving billions and billions of dollars of federal money. And any rational juror could conclude nothing but that at least $10,000 of that went to benefits, which the Supreme Court... The money could have been flowed through other things that weren't benefit programs. It seems your best argument is that Fernandez, the first case around, ties our hands on that funds is enough to meet sufficiency. Even if we accept that proposition, though, we've still got the jury instruction issue. And so the jury instruction issue requires you, it seems to me, to prove that not only was the funds evidence sufficient, but that it was sufficiently strong that the jury almost certainly would have adopted it. So I don't think Fernandez ties our hands at all on that issue. We could conclude that there was a clear error in the jury instructions here over objection to emit a benefit, and we'd find that the funds alone, even if sufficient, were not enough to so overwhelm the result that we could let this verdict stand. I think that's right, Your Honor. I mean, essentially, we have separately a sufficiency claim and a jury instruction claim. But at the end of the day, in light of the jury instruction claim, we are left with having to argue that the evidence was overwhelming on this issue. But, of course, the outcome would be different if there were jury instruction error, which would be a vacator and a potential retrial. I think this language may be of some relevance. And Fisher says, I don't know exactly what page it is because I'm – well, anyway, it says, our discussion should not be taken to suggest that federal funds distributed under an assistance program will result in coverage of all recipient fraud under Section 666B. Any receipt of federal funds can, at some level of generality, be characterized as a benefit. The statute does not employ this broad, almost limited use of the term. This is what we have here. Well, that's right, Your Honor. But, again, I don't think that language can be divorced from the context of Fisher. Just above that, the Court spends page after page speaking of what's carved out of the definition of federal benefits. And the only thing it carves out of that definition are point-of-sale transactions. It gives the example of the government buying equipment from a supplier. That's the type of federal fund transaction that is not reached by 666. Court and Fisher specifically talked about how 666 is to be interpreted broadly and expansively to vindicate the federal government's interest in protecting the funds that it gives out that are used as benefits. When we've got an arm's-length lease of property by the federal government from the Commonwealth of Puerto Rico, where would that fit? Your Honor, I think – Even though the Court didn't mention it. Right. And I think that would be – I think it would be an issue for a court to consider and to look at. In that case, a court might have to look at the purpose, structure, and organization and operation of the program to determine whether that was sort of a point-of-sale transaction or not. It might not be a benefit. I think, ultimately, I admit that what I'm asking the Court here to do is to conclude that no rational juror could find that all but four point – and I can't even go through the numbers – all but $10,000 or everything other than $10,000 of $4.7 billion went to those types of transactions. There are other possibilities. The stipulation says, I think, in excess of $4.7 billion went to the Commonwealth. Federal funds went to the Commonwealth. But it doesn't tell the juror, the jury, how much money went. What if it was $100 billion? Would it then be reasonable for a juror to assume that some part of the $4.7 billion that is mentioned in the stipulation is benefits? If there was a total of $100 billion. See, none of that is in the record. Well, I think if it's over $4.7 billion, a jury would have to find that $9,999 of the money was benefits and the other $4.7,999,999… Yeah, I'm positing a different hypothetical. What if the facts on the ground, not put in the record, were that there were $100 billion in federal funds? The stipulation only talks about $4.7 billion. So what's the frame of reference that a juror has to decide about how much of the $4.7 billion were benefits or not benefits? Well, I think the frame of reference is simply the delta between $4.7 billion or whatever the number is and $10,000… What are you going to do about the $100 billion, though? Well, that's just a greater delta, Your Honor. I think it just would further underscore… I think the question in the other direction is a tougher question for me, which is what if the government had put in a stipulation that the Commonwealth of Puerto Rico received $11,000 in federal funds? Yes, that would be a tougher case, that's for sure. Right, but that's why I'm not sure I'm fully understanding your question. That's okay. I'm not sure I understand it either. But I have two further questions for you. Following up on one of Judge Torea's questions early on, so was the case, this particular version of the case, was it tried by the Division or by the U.S. Attorney's Office? By the Public Integrity Section of the Criminal Division. Okay. And the other question I have is where have you been? I haven't seen you in years. I know, I know. I've been trying to fix problems in D.C. You only come for the hard ones? Yes, exactly. That's right. Thank you. Thank you. This is a sufficiency issue. There's two missing elements in their proof. The government hasn't begun to address federal programs. It's an important element. The legislative history of 666 at Senate Report 98-225 of 370 says the term federal program means there must exist a specific statutory scheme authorizing the federal assistance in order to promote or achieve certain policy objectives. Not every federal contract or disbursement of funds would be covered. In terms of benefits, to continue with Judge Torreya's quote from Fisher, Fisher talks about a mandatory examination. What could the funds have been for if they weren't for some federal benefit program? They could be for the statutory prohibited purposes, salaries, wages, reimbursements. They could be for commercial payments. They could be to maintain federal lands or buildings. But the principal point is we're disciplined to look in the record. It's their burden. They failed to meet the burden. Benefits are not funds. Footnote 4 of this court's decision in Dubon-Otero, Judge Bezos's decision granting bail pending appeal, all talked about the lack of equivalence between benefits and funds. The instruction here was in terms of funds. The jury had no ability to determine the essential element of a federal program or the essential element of a benefit when it was wrongly instructed. But most importantly, the government has a burden. They failed to prove their case. We look to the plain terms of the statute. We don't kind of inflate a statute or transform its terms. Justice Breyer in the Marinella case from March of 2018 talked about not looking, not expanding terms. That was an impede or obstruct case of the IRS. And for all of those reasons, we urge you to vacate the conviction based on the sufficiency grounds. Thank you, sirs. Your Honors, let me conclude by responding to three points that you made. First, Judge Howard, you've raised the issue whether or not McLean now gives you the roadmap for how courts should do this. And I think it's inevitable that it does in the following way. The Paxeo case says when the government tried to make a distinguishing argument between benefits and funds, an interesting phrase. It said this is a context-specific inquiry. How can you make that context-specific inquiry given the mandate of Fisher unless you have evidence of what is the program so that you can examine what every court keeps saying. As Fishers, the program structure, operation, and purpose. With no evidence, you can't make that examination. As to whether the jury has to do it, if you look at the Fisher case again and the quote right after what you were quoting, it says this inquiry should be examining the conditions under which the organization receives. Who makes the inquiry if it's not going to be the jury? And the last point is the one as to even the trial court recognized at the end of the analysis that something very immiscid happened when it decided to grant these defendants bail pending appeal because it realized that this error had occurred. Thank you all.